Aileen M. Hunter, California Bar No. 253162
aileen.hunter@bclplaw.com
Traci G. Choi, California Bar No. 307245
traci.choi@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
3161 Michelson Drive, Suite 1500
Irvine, California 92612-4414
Telephone: (949) 223-7000
Facsimile: (949) 223-7100

Attorneys for Plaintiff
CHARTWELL STAFFING SERVICES INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

CHARTWELL STAFFING SERVICES INC, a New York corporation,

Plaintiff,

v.

ATLANTIC SOLUTIONS GROUP INC., a Delaware corporation, doing business as EMPIRE WORKFORCE SOLUTIONS; ADAM KIDAN, an individual; TONY ALANIS, an individual; ROSA BENAVIDES, an individual; MARLENE CORNEJO, an individual; JAMIE DIAZ, an individual; DENISE GONZALES, an individual; PATRICIA HANKS, an individual; NICK REBULTAN, an individual; and DOES 1 through 10, inclusive,

Defendants.

Case No. 8:19-cv-00642 JLS (JDEx)

**EX PARTE APPLICATION OF PLAINTIFF CHARTWELL STAFFING SERVICES INC. FOR TEMPORARY RESTRAINING ORDER AND REQUEST TO ISSUE ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

[Filed with Declarations of W. Holmes Lilley, Patrick McKenney, Jonathan La Bella, Brian Gillespie, Sandra Lee, David Kooiman, Taylor Guay, Yishai Perez, Jonace Temblador, Jose Cabrera, and Traci G. Choi; Request for Judicial Notice; Notice of Lodging; and Proposed Order]

Hon. Josephine L. Staton
Courtroom 10A

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**TO THE HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff Chartwell Staffing Services, Inc. ("Chartwell") applies to the Court *ex parte* for a temporary restraining order ("TRO") enjoining Defendants Atlantic Solutions Group Inc., doing business as Empire Workforce Solutions ("Empire"), Adam Kidan, Tony Alanis, Rosa Benavides, Marlene Cornejo, Jamie Diaz, Denise Gonzales, Patricia Hanks, and Nick Rebultan (collectively, "Defendants"), and any individuals working in concert with or at the direction of Defendants, from using confidential, trade secret information belonging to Chartwell for their benefit. Chartwell applies *ex parte* for a temporary restraining order:

(1) Enjoining, prohibiting, and restraining all Defendants, their employees, agents, and persons acting with them or on their behalf from engaging in the following acts:

a. Using Chartwell's confidential, proprietary information in all formats including information obtained from Chartwell's Customer Relationship Management ("CRM") and Madison Online Solutions ("MOS") databases, consisting of (i) Chartwell's proprietary client list, including information contained therein relating to the clients' and their business affairs, special staffing needs, preferred methods of doing business, methods of operation, key contact personnel, and mark up rates and other negotiated terms specific to each customer; (ii) names, addresses, telephone numbers, qualifications, education, accomplishments, experience, availability, resumes and other data regarding persons who have applied or have been recruited for temporary or permanent employment with Chartwell; and (iii) job order specifications, including particular characteristics and requirements of persons generally hired by a client, specific job

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

listings, mailing lists, computer runoffs, pay rates and other financial information ("Confidential Trade Secret Information");

   b.  Using Confidential Trade Secret Information by contacting Chartwell's customers to solicit their business; and

   c.  Using Confidential Trade Secret Information by contacting employee applicants of Chartwell to solicit their employment.

(2) Directing all Defendants to return or destroy all Confidential Trade Secret Information in their possession, in all formats.

Chartwell also seeks an Order to Show Cause why a preliminary injunction should not issue pending trial.

Chartwell makes this Application pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 7-19 on the grounds that without the requested relief, Chartwell will be irreparably harmed. The actions of Defendants are specifically intended to unfairly compete with Chartwell and drive Chartwell out of business.

Chartwell is an employment staffing agency. California law specifically protects employment agencies from such unlawful competition: "customer list, including the names, addresses and identity of all employer customers who have listed job orders with an employment agency within a period of 180 days prior to the separation of an employee from the agency and including the names, addresses and identity of all applicant customers of the employment agency, shall constitute a trade secret and confidential information of, and shall belong to, the employment agency." Cal. Bus. & Prof. Code § 16607.

Chartwell further ensures the protection of its Confidential Trade Secret Information by requiring employees to sign Employment Agreements, in which they agree not to disclose Chartwell's Confidential Trade Secret Information without Chartwell's consent, and not to solicit current customers and employees of Chartwell.

Mr. Kidan was the President of Chartwell until March 8, 2019, when he

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

resigned from his position, taking six other employees with him to start his own competing company, Empire. One of the other employees, Jamie Diaz, accessed and presumably took Chartwell's Confidential Trade Secret Information by downloading CRM and MOS, without Chartwell's consent, just two days before her resignation. Since their departure, Defendants have actively solicited business Chartwell's customers with the intent to interfere with Chartwell's business relationships. Defendants further continue to contact current employees of Chartwell to solicit their employment with Empire. Defendants have arranged meetings with Chartwell employees assigned to customer locations, during which Defendants promulgated false statements about Chartwell's financial stability, in efforts to coerce Chartwell's current employees to terminate their employment with Chartwell and join Empire.

Pursuant to Local Civil Rule 7-19, Chartwell believes Mr. Affeld is counsel for Defendants. His contact information is as follows:

David Affeld
Affeld Grivakes LLP
2049 Century Park East, Suite 2460
Los Angeles, CA 90067

**In accordance with the Hon. Josephine L. Staton's rules, Defendants are hereby notified that any opposing papers must be filed no later than 24 hours after service of this Application.**

Prior to filing, Chartwell contacted Mr. Affeld to ascertain whether Mr. Affeld represents the Defendants. As of the filing of this Application, Mr. Affeld has not confirmed. Chartwell believes the Defendants oppose the requested relief, as set forth in the related case, *Atlantic Solutions Group, Inc., et al. v. Chartwell Staffing Solutions, Inc.*, Case No. 8:19-cv-00642.

This Application is based on this Application, the attached Memorandum of Points and Authorities, the concurrently filed Declarations of W. Holmes Lilley,

Patrick McKenney, Jonathan La Bella, Taylor Guay, David Kooiman, Yishai Perez, Jonace Temblador, Brian Gillespie, Sandra Lee, Jose Cabrera and Traci Choi, Request for Judicial Notice, Notice of Lodging, and on all papers, pleadings and records on file in this action.

Dated: April 18, 2019

Aileen M. Hunter
Traci G. Choi
**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Traci G. Choi*
Traci G. Choi
Attorneys for Plaintiff
CHARTWELL STAFFING SERVICES INC.

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 5
II. STATEMENT OF FACTS ..... 6
A. Chartwell Staffing Agency. ..... 6
B. Defendants' Employment with Chartwell. ..... 9
C. Kidan's Pre-Resignation Solicitation Efforts ..... 10
D. Diaz's Improper Access of Confidential Trade Secret Information ..... 11
E. Defendants' Resignation from Chartwell and Employment with Empire ..... 11
F. Defendants' Unlawful Solicitation of Customers and Employees ..... 12
III. LEGAL STANDARD ..... 14
IV. CHARTWELL IS LIKELY TO SUCCEED ON THE MERITS. ..... 14
A. Chartwell Will Prevail on Its Claim for Violation of the DTSA. ..... 15
1. Chartwell's Confidential Trade Secret Information constitutes a "trade secret" as defined in the DTSA. ..... 15
2. Defendants misappropriated Chartwell's Confidential Trade Secret Information. ..... 17
B. Chartwell Will Prevail on Its Claim for Violation of the CUTSA. ..... 19
1. Chartwell's Confidential Trade Secret Information Constitutes Protectable Trade Secrets Under the CUTSA ..... 20
2. Defendants Misappropriated Chartwell's Trade Secrets in Violation of the CUTSA ..... 23
3. AMN Healthcare, Inc. v. Aya Healthcare Services, Inc. Does Not Protect Defendants. ..... 23
V. CHARTWELL WILL BE IRREPARABLY HARMED IF THE ORDER IS NOT ISSUED. ..... 24
VI. THE BALANCE OF HARMS TIPS SHARPLY IN CHARTWELL'S FAVOR. ..... 26
VII. THERE IS LITTLE TO NO IMPACT ON THE PUBLIC INTEREST. ..... 26
VIII. CONCLUSION ..... 27

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ........ 14

*AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*,
28 Cal. App. 5th 923 (2018) ........ 23, 24

*Bank of Am., N.A. v. Lee*,
2008 WL 4351348 (C.D. Cal. Sept. 22, 2008) ........ 22, 26

*Courtesy Temporary Service, Inc. v. Camacho*,
222 Cal. App. 3d 1278 (1990) ........ 20, 21

*Gallagher Benefits Servs., Inc. v. De La Torre*,
2007 WL 4106821 (N.D. Cal. Nov. 16, 2007) ........ 24

*Henry Schein, Inc. v. Cook*,
191 F. Supp. 3d 1072 (N.D. Cal. 2016) ........ 16

*League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*,
752 F.3d 755 (9th Cir. 2014) ........ 26

*MAI Sys. Corp. v. Peak Computer, Inc.*,
991 F.2d 511 (9th Cir. 1993) ........ 16, 20

*Markovits v. Venture Info Capital, Inc.*,
129 F. Supp. 2d 647 (S.D.N.Y. 2001) ........ 25

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ........ 14

*Morlife, Inc. v. Perry*,
56 Cal. App. 4th 1514 (1997) ........ 5, 14, 20, 23

*Reeves v. Hanlon*,
33 Cal. 4th 1140 (2004) ........ 23

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

*Religious Technology Center v. Netcom On-Line Communications Services, Inc.*,
923 F. Supp. 1231 (N.D. Cal. 1995) .......... 22

*Sampson v. Murray*,
415 U.S. 61 (1974) .......... 14

*Stuhlbarg Int'l Sales Co., v. John D. Brush & Co.*,
240 F.3d 832 (9th Cir. 2001) .......... 24

*Sun Distributing Company, LLC v. Corbett*,
2018 WL 4951966 (S.D. Cal. Oct. 12, 2018) .......... 15

*WHIC LLC v. NextGen Laboratories, Inc.*,
341 F. Supp. 3d 1147 (D. Haw. 2018) .......... 16

*Whyte v. Schalge Lock Co.*,
101 Cal. App. 4th 1443 (2002) .......... 22

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 14

**Statutes**

18 U.S.C. § 1836 .......... 14, 15

18 U.S.C. § 1839 .......... 16, 18

Cal. Bus. & Prof. Code § 16607 .......... 6, 16, 17, 20

Cal. Civ. Code § 3426.1 .......... 14, 19, 20, 21, 22, 23

Cal. Civ. Code § 3426.2 .......... 15, 23

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

"[F]undamental to the preservation of our free market economic system is the . . . right to have the ingenuity and industry one invests in the success of the business or occupation protected from the gratuitous use of that 'sweat-of-the-brow' by others." *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1520 (1997).

This case is a classic example of unfair competition and misappropriation of trade secrets - the former President of Chartwell Staffing Services, Inc. ("Chartwell") is unlawfully gutting the company of its customers and employees for his own competing company, Atlantic Solutions Group, Inc., doing business as Empire Workforce Solutions ("Empire").

Chartwell is a national staffing agency, with a strong presence in southern California. It is a privately held company, 100% owned by Tracy Kidan. From the company's inception until March 8, 2019, her husband, Adam Kidan, was an officer of the company, including the CEO. As their marriage fell apart, Adam Kidan began his scheme to open a competing business, taking with him over fifteen employees, including the seven other individuals named in this lawsuit.

Kidan solicited numerous employees while still purporting to act as the President of Chartwell, incorporated his competing business, and presumably directed at least one of the employees to download information from Chartwell's confidential proprietary database right before her resignation.

Empire, Kidan, and the seven other individually named defendants (collectively, "Defendants") began actively soliciting customers of Chartwell, including those who have placed job orders with Chartwell in the last 180 days preceding Kidan's resignation. Specifically, Defendants engaged in a scheme where they would visit various job sites of customers, gather all of the Chartwell employees at that site, and coerce them to fill out Empire job applications, either with express misrepresentations or omissions regarding the employees' ability to

continue to be employed with Chartwell. As a result, Chartwell customers have already begun sending business to Empire and terminated current assignments with Chartwell.

Defendants are engaged in the very act the Defend Trade Secrets Act and California Uniform Trade Secrets Act were designed to prevent. California law specifically protects employment agencies from such unlawful competition: "customer list, including the names, addresses and identity of all employer customers who have listed job orders with an employment agency within a period of 180 days prior to the separation of an employee from the agency and including the names, addresses and identity of all applicant customers of the employment agency, shall constitute a trade secret and confidential information of, and shall belong to, the employment agency." Cal. Bus. & Prof. Code § 16607.

Unless Defendants are enjoined from misappropriating Chartwell's trade secrets by soliciting customers and employees of Chartwell, Chartwell will suffer irreparable harm. Chartwell respectfully requests the Court issue a temporary restraining order, enjoining Defendants from soliciting Chartwell customers and employees until the motion on a preliminary injunction can be heard. Chartwell further requests the Court order Defendants to destroy any versions of Chartwell's confidential trade secret information in their possession.

## II. STATEMENT OF FACTS

### A. Chartwell Staffing Agency.

Chartwell is a national employee staffing agency in 2012. (Lilley Decl. ¶ 4.) Chartwell provides a variety of staffing services to its customers. Chartwell has been successful in developing and maintaining an advantageous, stable, and continuous customer base. It is one of the nation's top woman-owned staffing agencies. Chartwell has approximately 40 branch offices throughout the country, and 11 specifically in southern California. Chartwell has branches in 13 states, and employees in one state routinely work with other employees and customers in other

Bryan Cave Leighton Paisner LLP
3161 Michelson Drive, Suite 1500
Irvine, California 92612-4414

states. Chartwell also routinely assigns employees to customer jobs located across state lines. (Lilley Decl. ¶ 3.)

Over the past seven years, Chartwell has dedicated significant resources to compiling information regarding its customers and employees. Chartwell employs a permanent sales force to seek out and secure new business and service Chartwell's current clients. Chartwell also employs staffing specialists and branch managers in each of its offices, who service customer accounts, solicit new business, interview employee applicants, fill customer job orders, and distribute payroll checks to employees. Chartwell has spent no less than $15 million developing its customer and employee base. (Lilley Decl. ¶ 4.)

Chartwell owns confidential information not available to the public, including but not limited to Chartwell's customer lists, including information relating to customers' business affairs, special staffing needs, preferred methods of doing business, methods of operation, key contact personnel, mark up rates, pay rates, and other negotiated terms specific to each customer, job order specifications and the particular characteristics and requirements of persons generally hired by the customer, specific job listings, mailing lists, computer runoffs, financial and other information; and employee information, including the names, addresses, telephone numbers, qualifications, education, accomplishments, experience, availability, resumes and other data regarding persons who have applied or been recruited for temporary or permanent employment' (collectively, the "Confidential Trade Secret Information"). (Lilley Decl. ¶ 5.)

A portion of the Confidential Trade Secret Information is maintained in a proprietary database, called "Customer Relationship Management," or "CRM." CRM is managed by a vendor called Madison Resources. (Lilley Decl. ¶ 6; Guay Decl. ¶¶ 2-3.)

CRM includes the following information: (1) information about customers, including customer name, contact information, preferred contact with customer and

Bryan Cave Leighton Paisner LLP
3161 Michelson Drive, Suite 1500
Irvine, California 92612-4414

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

method of doing business, business needs and affairs, pricing arrangements, specified needs of customer, job listings, and particular characteristics and requirements of persons generally hired by customer; and (2) information about employees, including employees' names, addresses, telephone numbers, qualifications, education, accomplishments, experience, availability, resumes, and other data. (Lilley Decl. ¶ 7; Guay Decl. ¶ 3.)

Madison Resources also manages Madison Online Solutions ("MOS"), which Chartwell uses to report post-payroll data. MOS contains information regarding Chartwell's accounts receivables, invoices to customers, and other billing information relating to customers. (Lilley Decl. ¶ 8; Guay Decl. ¶¶ 2, 4.)

Chartwell's Confidential Trade Secret Information, including the information contained in CRM and MOS, provides Chartwell with a competitive advantage over its competitors. Because of the confidential and proprietary nature of the information contained in CRM and MOS, only certain Chartwell employees and Madison Resources, have access to it. (Lilley Decl. ¶ 9.)

As part of their duties, Chartwell's sales and branch employees develop familiarity and contacts with Chartwell's customers and employees. In order for the employees to effectively carry out their employment duties, Chartwell necessarily reveals to its employees confidential and proprietary information regarding its customers, including their sales volume, profit margins, special employment needs, particular likes and dislikes and pay rates and mark ups. Similarly, in the course of their employment at Chartwell, employees necessarily acquire confidential knowledge regarding Chartwell's employees/labor force, including their names, addresses, job skills, past employment history and employment record with Chartwell's customers. (Lilley Decl. ¶ 10.)

As a result, Chartwell takes extreme precautions to safeguard confidential information regarding its customers and employees, including the information contained in CRM and MOS. Chartwell requires its employees to sign Employment

Agreements which restricts the employees' ability to use Chartwell's confidential information, other than as authorized by Chartwell. Further, Chartwell employees may not access CRM and MOS except by logging in with credentials which are uniquely assigned to each employee. Upon termination or resignation of an employee, Chartwell immediately terminates the employee's access to CRM and MOS, by directing Madison Resources to delete the employee's credentials. (Lilley Decl. ¶¶ 11-12.)

**B. Defendants' Employment with Chartwell.**

In 2012, Adam Kidan began working for Chartwell. From 2012 to March 8, 2019, Mr. Kidan held a number of officer positions at Chartwell, including Vice President, Secretary, Chief Executive Officer, and President. (Lilley Decl. ¶ 13.)

In 2012, Chartwell hired Jamie Diaz. (Lilley Decl. ¶ 18, Ex. 5.) In 2015, Chartwell hired Rosa Benavides and Patricia Hanks. (Lilley Decl. ¶¶ 14-15, Exs. 1-2.) In 2016, Chartwell hired Tony Alanis and Marlene Cornejo. (Lilley Decl. ¶¶ 16-17, Exs. 3-4.) In 2017, Chartwell hired Denise Gonzalez and Nicolas Rebultan. (Lilley Decl. ¶¶ 19-20, Exs. 6-7.) Each of these employees signed an Employment Agreement. (*Id.*)

Each employee agreed and acknowledged the following were confidential information belonging to Chartwell: (1) "manuals, methods, forms, techniques and systems which [Chartwell] owns, plans or develops, whether for its own use or for use by or with its clients"; (2) "information concerning [Chartwell]'s clients, including their business affairs, special needs, preferred methods of doing business, methods of operation, key contact personnel and other data"; (3) "names, addresses, telephone numbers, qualifications, education, accomplishments, experience, availability, resumes and other data regarding persons who have applied or been recruited for temporary or permanent employment by [Chartwell]"; and (4) "job order specifications and the particular characteristics and requirements of personally generally hired by a client, specific job listings, mailing lists, computer runoffs,

Bryan Cave Leighton Paisner LLP
3161 Michelson Drive, Suite 1500
Irvine, California 92612-4414

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

financial and other information." (Lilley Decl., Exs. 1-4, § 5; Exs. 5-7, § 4(a).) Each employee further agreed he or she will not "whether during or after [his or her] employment with [Chartwell], use for any reason or disclose to any person any of [Chartwell's] Confidential Information or permit any person to examine and/or make copies of any documents which may contain or are derived from Confidential Information, whether prepared by the Employee or otherwise[.]" (Lilley Decl., Exs. 1-4, § 6; Exs. 5-7, § 4(b).)

**C. <u>Kidan's Pre-Resignation Solicitation Efforts</u>**

On or about November 7, 2018, while still acting as the President of Chartwell, Kidan secretly and without making any disclosure to Chartwell of his actions, incorporated Atlantic Solutions Group, Inc., doing business as Empire Workforce Solutions ("Empire") in the state of Delaware. (Choi Decl., Ex. 3.)

Beginning in early 2019, Mr. Kidan began soliciting employees of Chartwell to terminate their employment with Chartwell and work for Empire. By that time, Mr. Kidan had already solicited at least one employee, Tony Alanis, to join his new company – and together they began to jointly solicit current employees.

Specifically, in January 2019, Alanis approached Jonathan La Bella to recruit La Bella to join Empire. (La Bella Decl. ¶ 2.) Alanis and Kidan subsequently met with La Bella two times to convince La Bella to join Empire. (La Bella Decl. ¶¶ 3-4.) During one of those meetings, Alanis and Kidan informed La Bella that they had already recruited Denise Gonzalez, Rosa Benavides, Patricia Hanks, and Marlene Cornejo to join their company. (*Id.*) Alanis and Kidan also met with Patrick McKenney in February 2019, and attempted to recruit McKenney to join their new company. (McKenney Decl. ¶ 2.)

When Kidan perceived his solicitation efforts with La Bella and McKenney to have failed due to the efforts of another Chartwell employee, David Kooiman, Kidan left Kooiman a defamatory and threatening voicemail. (Kooiman Decl., Ex. 1.)

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

On March 5, 2019, Empire registered to do business in California. (Choi Decl., Ex. 1.) Their current statement of information shows Kidan is the Chief Executive Officer and Chief Financial Officer, and Alanis is the Secretary. (Choi Decl., Ex. 2.)

**D. Diaz's Improper Access of Confidential Trade Secret Information**

On March 6, 2019, while on paid time off, Jamie Diaz accessed Chartwell's Confidential Trade Secret Information by accessing CRM and MOS. (Lilley Decl. ¶¶ 33-34.) Specifically, Diaz logged on to CRM on March 6, 2019, at 7:59 p.m. (Eastern Time). Diaz accessed MOS on March 6, 2019, at 8:00 p.m. (Eastern Time). Diaz was last active on CRM on March 6, 2019, at 8:01 p.m. (Eastern Time). (Guay Decl. ¶ 8, Exs. 1-2.) Diaz had the ability to, and presumably did, export the information contained in MOS and CRM, which she downloaded onto a hard drive or emailed. (Guay Decl. ¶ 6.)

Two days after her suspicious log in to CRM and MOS, Diaz resigned from Chartwell and joined Empire. (Lilley Decl. ¶ 34; Choi Decl., Ex. 4.)

**E. Defendants' Resignation from Chartwell and Employment with Empire**

On March 8, 2019, Kidan resigned as President of Chartwell. (Lilley Decl. ¶ 35.) Diaz, Alanis, Benavides, Cornejo, Hanks, and Gonzalez resigned from their positions with Chartwell on March 8, 2019. (Lilley Decl. ¶ 35.) On March 15, 2019, four more employees resigned from Chartwell, including Rebultan. (Lilley Decl. ¶ 36.) On March 22, 2019, seven more employees resigned from Chartwell, including Nieves, Case, and Clark. (Lilley Decl. ¶ 37.)

According to his LinkedIn profile, Alanis is an Executive Vice President and Partner at Empire. (Choi Decl., Ex. 4.) He is also the Secretary according to Empire's Secretary of State filing. (Choi Decl., Ex. 2; Request for Judicial Notice, Ex. 2.) LinkedIn also shows Diaz, Hanks, Cornejo, and Gonzalez as employees of Empire. (Choi Decl. Ex. 4.)

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**F. Defendants' Unlawful Solicitation of Customers and Employees**

Revolve Clothing, Granitize Products, Inc., Protective Industries, Inc., doing business as Caplugs, Cal-Western Manufacturers, Stepstone, and Aquamar are five of Chartwell's customers who have hired Chartwell to assist them in staffing their respective businesses. (Lilley Decl. ¶¶ 22-27, Exs. 8-12.) Each of them has placed job orders with Chartwell in the 180 days preceding March 8, 2019. (Lilley Decl. ¶ 22.)

**Revolve Clothing.** Within days of their resignation from Chartwell, on March 18, 2019, Benavides and Cornejo visited Revolve Clothing ("Revolve"), a customer of Chartwell. (Cabrera Decl. ¶ 2.) Cornejo told one of the employees that Revolve no longer wanted to do business with Chartwell, and that in order to continue working at Revolve, the Chartwell employees needed to complete Empire employment applications. (Cabrera Decl. ¶ 2.) All the Chartwell employees were called into a room, and told to fill out Empire employment applications. (Cabrera Decl. ¶¶ 2-3.) The same day, Chartwell received a message from a Chartwell employee working at Revolve Clothing, a customer of Chartwell, stating that Revolve announced it would no longer be working with Chartwell, and that if the employees wanted to continue to working at Revolve, they needed to sign up with Empire. (Gillespie Decl. ¶ 2.) Benavides and Cornejo's representations proved to be false – Revolve continues to do business with Chartwell, and Chartwell currently has employees assigned to work at Revolve. (Lilley Decl. ¶ 23.)

**Granitize.** On March 19, 2019, Marlene Cornejo and another woman visited the job site of another Chartwell customer, Granitize Products, Inc. ("Granitize"), where four Chartwell employees were working. (Perez Decl. ¶ 2.) They met with the four Chartwell employees, and told them that Chartwell was "going under" and that if they wanted to keep their jobs at Granitize, they needed to fill out the Empire applications. All four employees filled out the applications. (*Id.*)

After the Empire visit, Chartwell received notice from Granitize, stating that

as of March 17, 2019, Granitize would terminate the assignments of all four Chartwell employees. (Gillespie Decl. ¶ 3, Ex. 1.) Granitize further stated they did not need any replacement employees and declined to provide any feedback regarding the terminations. (*Id.*)

On or about March 20, 2019, Ms. Cornejo and the other woman returned to the Granitize job site, with Nick Rebultan and Tony Alanis. (Perez Decl. ¶ 3.) They again informed the Chartwell employees that Chartwell was "doing bad" and "very soon will be out of business," and that they should join Empire if they wanted to keep their jobs. (*Id.*) They further informed the Chartwell employees that if they contacted Chartwell, Chartwell would deny it and try to get them to stay by offering a $100 bonus if they stayed with Chartwell. (*Id.*)

**Caplugs.** On March 18, 2019, Denise Gonzalez visited the job site of Protective Industries, Inc., doing business as Caplugs ("Caplugs"). (Temblador Decl. ¶ 2.) She met with a Chartwell employee, and told him Chartwell had "split up," and that the new company was Empire. (Temblador Decl. ¶ 3.) She told him to fill out the Empire application, which he did. (*Id.*) She further told him Chartwell's Gardena branch had shut down and would not be there. (*Id.*)

**Aquamar.** On or about March 29, 2019, Chartwell received calls from Aquamar, a current client of Chartwell, who stated she had been getting "voicemails and communications" from Hanks soliciting business for her new company, Empire. (Lee Decl. ¶ 2.)

**Cal-Western and Stepstone.** On or about March 27, 2019, Chartwell learned Cal-Western Manufacturers was placing job orders with Empire. (Lilley Decl. ¶ 35, Ex. 13.) The same day, Chartwell also learned Stepstone had replaced 13 Chartwell employees, who were "rolled over" to Empire. All 13 employees were employed by Chartwell until recently. (Lilley Decl. ¶ 36, Ex. 14.)

Bryan Cave Leighton Paisner LLP
3161 Michelson Drive, Suite 1500
Irvine, California 92612-4414

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

**III. LEGAL STANDARD**

This Court considers four factors in determining whether to issue a temporary restraining order: (1) the likelihood of plaintiff's success on the merits; (2) the threat of irreparable harm to plaintiff if the order is not issued; (3) the relative balance of harm between the parties; and (4) the impact on the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

While the plaintiff's burden of persuasion is to make a "clear showing," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997), courts in the Ninth Circuit apply a sliding-scale approach to the *Winter* factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Injunctive relief may issue where a plaintiff has raised "serious questions on the merits"—rather than a more complete showing that he is likely to succeed on the merits—so long as the balance of hardships tips sharply in his favor and he satisfies the remaining two prongs of *Winter*. *Id.*

If the Court issues a restraining order, it may concurrently issue an order to show cause why a preliminary injunction should not issue. *See Sampson v. Murray*, 415 U.S. 61, 86-87 (1974) (a temporary restraining order provides immediate, temporary relief; that relief may be continued by a preliminary injunction).

This Court should issue a temporary restraining order immediately and, after a hearing, extend the relief through the end of trial by issuing a preliminary injunction.

**IV. CHARTWELL IS LIKELY TO SUCCEED ON THE MERITS.**

"[F]undamental to ... [the] right to have the ingenuity and industry one invests in the success of a business or occupation protected from the gratuitous use of that 'sweat of the brow' by others." *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1520 (1997). This principle is codified in the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 *et seq.*, and the California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426.1 *et seq.*

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

Under the DTSA and the CUTSA, a court may grant an injunction to prevent any "actual or threatened misappropriation." *See* Cal. Civ. Code § 3426.2; 18 U.S.C. § 1836(b)(3)(A).

**A. Chartwell Will Prevail on Its Claim for Violation of the DTSA.**

The DTSA allows an "owner of a trade secret that is misappropriated" to bring a civil action under this subsection if the "trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b). The present case involves Confidential Trade Secret Information belonging to a national staffing agency, with branches in 13 states. (Lilley Decl. ¶ 3.) Employees in one state routinely work with other employees and customers in other states. (*Id.*) Chartwell routinely assigns employees to customer jobs located across state lines. (*Id.*) The services at issue are used in interstate commerce.

1. Chartwell's Confidential Trade Secret Information constitutes a "trade secret" as defined in the DTSA.

"In establishing the existence of a trade secret, '[a] plaintiff need not "spell out the details of the trade secret,"' [citation], but must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *Sun Distributing Company, LLC v. Corbett*, 2018 WL 4951966, at *3 (S.D. Cal. Oct. 12, 2018).

Under the DTSA, a "trade secret" includes:

> all forms and types of financial, business, ... [or] economic [] information, including ... compilations, ... methods, techniques, processes, procedures, [or] programs [], whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3). *See also MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) ("The Customer Database has potential economic value because it allows a competitor . . . to direct its sales efforts to those potential customers that are already using the MAI computer system."); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) ("Customer information such as sales history and customer needs and preferences constitute trade secrets."); *WHIC LLC v. NextGen Laboratories, Inc.*, 341 F. Supp. 3d 1147, 1162-63 (D. Haw. 2018) (finding client information can be protected as trade secret under DTSA, even though client lists are not *per se* trade secret under Hawaii state law).

Chartwell is likely to succeed on its DTSA claim. Chartwell's Confidential Trade Secret Information includes customer lists, including information relating to customers' business affairs, special staffing needs, preferred methods of doing business, methods of operation, key contact personnel, mark up rates, pay rates, and other negotiated terms specific to each customer, job order specifications and the particular characteristics and requirements of persons generally hired by the customer, specific job listings, mailing lists, computer runoffs, financial and other information; and employee information, including the names, addresses, telephone numbers, qualifications, education, accomplishments, experience, availability, resumes and other data regarding persons who have applied or been recruited for temporary or permanent employment. The Confidential Trade Secret Information is a trade secret as defined by the DTSA and case law. Further, it is defined as "trade secret" by California Business and Professions Code section 16607(a), which states:

> the customer list, including the names, addresses and identity of all employer customers who have listed job orders with an employment agency within a period of 180 days prior to the separation of an employee from the agency and including the

Bryan Cave Leighton Paisner LLP
3161 Michelson Drive, Suite 1500
Irvine, California 92612-4414

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

> names, addresses and identity of all applicant customers of the employment agency, shall constitute a trade secret and confidential information of, and shall belong to, the employment agency.

Section 16607 "make[s] the customer lists of employment agencies a trade secret. Customer lists refer to both the employers who have listed job orders with the employment agency during the past 180 days and the job applicants who have sought the help of the agency. Making these lists a trade secret would provide the basis for an injunction and/or an action for damages against former employees of employment agencies who leave to join another agency or to open their own agency." (Request for Judicial Notice, Ex. 3.)

Chartwell has taken steps to ensure the secrecy of the Confidential Trade Secret Information, both by securing and limiting access to the CRM and MOS, which contain Confidential Trade Secret Information, but also by requiring its employees to sign Employment Agreements, which restrict their use of "Confidential Information," and contain non-disclosure agreements. (Lilley Decl. ¶¶ 11-12.)

The Confidential Trade Secret Information further has independent economic value – Chartwell has dedicated significant resources over the last seven years to compiling the information, and has spent no less than $15 million developing its customer and employee base. (Lilley Decl. ¶ 4.) Further, Chartwell's methods of doing business with its customers, including the customer's preferred methods of doing business, staffing needs, methods of calculating rates of pay and mark up, all have significant economic value and provide Chartwell with a competitive advantage over its competitors.

2. <u>Defendants misappropriated Chartwell's Confidential Trade Secret Information.</u>

The DTSA's defines "misappropriation" as:

> (A) acquisition of a trade secret of another by a person who

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

> knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
>
> (i) used improper means to acquire knowledge of the trade secret;
>
> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>
> (I) derived from or through a person who had used improper means to acquire the trade secret;
>
> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
> (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret[.]

18 U.S.C. § 1839(5). Finally, the DTSA defines "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means...." 18 U.S.C. § 1839(6).

Defendants misappropriated the Confidential Trade Secret Information through improper means. Specifically, Diaz accessed and downloaded information available on CRM and MOS, knowing that her actions in taking the information available on those databases to Empire constituted theft or, at the very least, a breach of her common law duties to maintain the secrecy of this information. 18 U.S.C. § 1839(6).

Further, Defendants used Chartwell's Confidential Trade Secret Information, which they acquired under circumstances giving rise to a duty to maintain the secrecy of the information or limit the use of the information. Each Defendant knew that they and/or the other Defendants acquired the Confidential Trade Secret Information in the scope of their employment with Chartwell, and knew they had a

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

duty to maintain the secrecy of the information and limit its use because each was required to sign an Employment Agreement defining the confidential information and prohibiting its disclosure. Each Defendant misappropriated Chartwell's Confidential Trade Secret Information by directly soliciting clients and employees, visiting client locations and meeting with current Chartwell employees assigned to work at those client facilities and coercing them, through misrepresentations or omissions, to apply for employment with Empire.

Based on this showing, Chartwell is likely to succeed on the merits of its DTSA claim.

**B. <u>Chartwell Will Prevail on Its Claim for Violation of the CUTSA.</u>**

The CUTSA defines "trade secrets" as including information, compilations, programs, methods, techniques, or processes that (1) derive independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information; and (2) which the owner has taken reasonable measures to keep such information secret. *See* Cal. Civ. Code § 3426.1(d). The CUTSA defines "misappropriation" as:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> (A) Used improper means to acquire knowledge of the trade secret; or
>
> (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
>
> (i) Derived from or through a person who had utilized improper means to acquire it;
>
> (ii) Acquired under circumstances giving rise to a duty to

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

> maintain its secrecy or limit its use; or
>
> (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

Cal. Civ. Code § 3426.1(b). "Improper means," for the purposes of the CUTSA, includes theft, misrepresentation, breach of a duty to maintain secrecy, or espionage through electronic or other means. *See* Cal. Civ. Code § 3426.1(a).

1. Chartwell's Confidential Trade Secret Information Constitutes Protectable Trade Secrets Under the CUTSA

"[T]he customer list, including the names, addresses and identity of all employer customers who have listed job orders with an employment agency within a period of 180 days prior to the separate of an employee from the agency, and including names, addresses, and identity of all applicant customers of the employment agency, shall constitute a trade secret and confidential information of, and shall belong to the employment agency." Cal. Bus. & Prof. Code § 16607(a). Further, in *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520–21 (9th Cir. 1993), the Ninth Circuit held a customer database qualified as a trade secret because it had potential economic value, in that competitors could direct sales efforts to certain customers. *See also Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1522 (1997) ("[A] customer list can be found to have economic value because its disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product as opposed to a list of people who only might be interested." (citations omitted)).

In *Courtesy Temporary Service, Inc. v. Camacho*, 222 Cal. App. 3d 1278 (1990), the plaintiff, a temporary employment agency, provided various companies with temporary workers. The defendants, former employees of the agency, admitted scheming to form a competitive business and compiled a list of the agency's major customers while employed by the agency. The agency sued the defendants for

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

unfair trade practices and injunctive relief for setting up a competing agency. The trial court issued a preliminary injunction enjoining the former employees from soliciting the agency's customers and temporary labor force.

The trial court erroneously found, however, that the agency's customer list and related information was unprotected work product, and thus denied an injunction enjoining use and disclosure of the information. On appeal, the court of appeal reversed the trial court ruling denying the injunction, concluding the customer list was indeed a protectable trade secret under the CUTSA and unfair competition statutes. The court found customer lists are protectable trade secrets even if the list contains information available to the public or competitors: "[E]ven if the customers' names could be found in telephone or trade directories, such public sources '"would not disclose the persons who ultimately made up the list of plaintiff's customers."' [Citation.] It is the list of persons who actually purchase Courtesy's services that constitute confidential information." *Courtesy*, 222 Cal. App. 3d at 1288.

"Here, the evidence established that Courtesy's customer list and related information was the product of a substantial amount of time, expense and effort on the part of Courtesy. Moreover, the nature and character of the subject customer information, i.e., billing rates, key contacts, specialized requirements and markup rates, is sophisticated information and irrefutably of commercial value and not readily ascertainable to other competitors. Thus, Courtesy's customer list and related proprietary information satisfy the first prong of the definition of 'trade secret' under section 3426.1." *Courtesy Temporary Service, Inc. v. Camacho*, 222 Cal. App. 3d at 1288.

*Courtesy* is directly on point. Defendants, led by Kidan, conspired to start a competing business while still employed with Chartwell. At least one of the Defendants accessed and presumably downloaded Chartwell's Confidential Trade Secret Information, containing customer lists and information particular to doing

Bryan Cave Leighton Paisner LLP
3161 Michelson Drive, Suite 1500
Irvine, California 92612-4414

business with that customer, including billing rates, specialized requirements, mark ups, and key contacts.

Further, as stated above, Chartwell's Confidential Trade Secret Information is not publicly known or readily ascertainable. It derives its economic value from the fact that it is secret because others in the industry would find value in its disclosure. Cal. Civ. Code § 3426.1(d)(1); *see Whyte v. Schalge Lock Co.*, 101 Cal. App. 4th 1443, 1455 (2002) (noting that this type of information "has independent economic value because [the plaintiff s] pricing policies would be valuable to a competitor to set prices which meet or undercut [the plaintiff's]."). Chartwell expended significant time and resources developing this information, including through use of proprietary software and processes.

Chartwell further took measures to ensure the secrecy of the Confidential Trade Secret Information. Cal. Civ. Code § 3426.1(d). The employees with access to Confidential Trade Secret Information were subject to confidentiality agreements identifying this information as highly confidential and restricting its use. *See, e.g*, *Religious Technology Center v. Netcom On-Line Communications Services, Inc.*, 923 F. Supp. 1231, 1253 (N.D. Cal. 1995) (noting that reasonable efforts can include "advising employees of the existence of a trade secret" and "requiring employees to sign confidentiality agreements"). Further, Chartwell requires password access to the databases containing Confidential Trade Secret Information, and immediately shuts off access to a departing employee. *See, e.g., Bank of Am., N.A. v. Lee*, 2008 WL 4351348, at *4 (C.D. Cal. Sept. 22, 2008) (noting that the plaintiff used reasonable efforts to keep its customer information secretive "based on the written [confidentiality] agreements ... and their password protection system."). In sum, there is a high likelihood that Chartwell will succeed in establishing that the information at issue constitutes protectable trade secrets.

2. Defendants Misappropriated Chartwell's Trade Secrets in Violation of the CUTSA

Defendants misappropriated Chartwell's trade secrets in violation of the CUTSA. Diaz, acting on behalf of and/or in concert with the other Defendants, "acqui[red]" Chartwell's Confidential Trade Secret Information by accessing CRM and MOS two days before her resignation, while she was on paid time off. In doing so, she and the other Defendants "[knew] or ha[d] reason to know" that doing so was "improper," where it constituted "theft," a "breach ... of [their] duty to maintain [the] secrecy" of such information, both contractually and under relevant law. Cal. Civ. Code § 3426.1.

Further, Defendants used Chartwell's Confidential Trade Secret Information by directly soliciting clients and employees, visiting client locations and meeting with current Chartwell employees assigned to work at those client facilities and coercing them, through misrepresentations or omissions, to apply for employment with Empire. California cases "have equated acts of solicitation with 'use' or 'misappropriation' of protected information." *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1524 (1997); *see also Reeves v. Hanlon*, 33 Cal. 4th 1140, 1155 (2004) ("[a] violation of the UTSA occurs when an individual misappropriates a former employer's protected trade secret client list, for example, by using the list to solicit clients [citation] or to otherwise attain an unfair competitive advantage [citation]."). And like the DTSA, the CUTSA explicitly permits a court to enjoin even the threatened misappropriation of trade secrets. Cal. Civ. Code § 3426.2(a). Thus, there is a strong likelihood that Chartwell will establish Defendants "misappropriated" Chartwell's Confidential Trade Secret Information in violation of the CUTSA.

3. *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.* Does Not Protect Defendants.

Chartwell anticipates Defendants will argue *AMN Healthcare, Inc. v. Aya*

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

*Healthcare Services, Inc.*, 28 Cal. App. 5th 923 (2018), protects their wrongful activity. It does not.

AMN and Aya were competitors in the field of providing "travel nurses" to medical care facilities throughout the countries. A number of AMN travel nurse recruiters left AMN and joined Aya, where they also worked as travel nurse employees. *AMN*, 28 Cal. App. 5th at 927. AMN sued Aya and the former employees for, among other things, breach of CUTSA.

The court rejected AMN's claim because "[t]he undisputed evidence shows each of these travel nurses already was known to Aya and was in its database, long before each individual defendant left AMN and went to work for Aya**.**" *Id.* at 944. Unlike Aya, Empire was founded by the individual defendants named in this case. Empire, a new company, had no prior databases, and did not develop its own customer database. It stole confidential information belonging to Chartwell to set up its competing business. Defendants will be unable to present any evidence to establish Empire was already in possession of Chartwell's confidential information *before* Kidan and the other individual defendants engaged in their scheme to gut Chartwell of its customers.

## V. CHARTWELL WILL BE IRREPARABLY HARMED IF THE ORDER IS NOT ISSUED.

"In general, the imminent use of a trade secret constitutes irreparable harm." *Gallagher Benefits Servs., Inc. v. De La Torre*, 2007 WL 4106821, at *5 (N.D. Cal. Nov. 16, 2007), *order aff'd in part, vacated in part sub nom. Gallagher Benefit Servs., Inc. v. De La Torre*, 283 F. App'x 543 (9th Cir. 2008) ("[T]he goodwill and customers that Gallagher would lose absent equitable relief supports [the lower court's] finding of irreparable injury."). "This is particularly true when the trade secret is a customer list, for solicitation of plaintiff's customers by defendants cannot be remedied by money damages alone." *Gallagher*, 2007 WL 4106821, at *5 (citation omitted); *see also Stuhlbarg Int'l Sales Co., v. John D. Brush & Co.*, 240

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Markovits v. Venture Info Capital, Inc.*, 129 F. Supp. 2d 647, 661 (S.D.N.Y. 2001) ("[The former employee's] continued use of [the company's] confidential information, and [his] inevitable competition based thereon, will likely cause serious damage to [the company's] reputation and client base. . . . The measure of this damage is simply unquantifiable.").

Chartwell has already suffered, and will continue to suffer immediate and irreparable injury, loss and damage should the Court not issue a TRO, enjoining Defendants from using Confidential Trade Secret Information, and contacting Chartwell's customers and employees assigned to those customers to solicit their business. Chartwell has already suffered damages as a result of Defendants' wrongful solicitation efforts at Cal-Western and Stepstone.

Further, as stated above, the threat of trade secret misappropriation, and of damage to customer relationships and business good will, are both well recognized as constituting irreparable injury. Not only is the value of trade secrets and confidential data lost through disclosure and use by a competitor – but the use of Chartwell's own trade secret information to enable a competitor to develop business solutions and pricing for the supply needs of Chartwell customers (1) provides Defendants an unfair head start, (2) enables them to trade on Chartwell's efforts, and (3) interferes with Chartwell's customer relationships and good will. All of this will inevitably lead to loss of sales and customers in ways that cannot be readily measured or compensated by money damages. Thus, Defendants' actions in the short term can significantly change the status quo, causing substantial harm.

Defendants have demonstrated their intent to use Confidential Trade Secret Information they acquired while employed with Chartwell to divert Chartwell customers. To prevent irreparable harm resulting from Defendants' misappropriation of Chartwell's trade secrets and interference with Chartwell's

relationships, it is imperative that the Court take action to prevent further exploitation of this information.

## VI. THE BALANCE OF HARMS TIPS SHARPLY IN CHARTWELL'S FAVOR.

"The balance of equities tips toward the . . . plaintiffs, because the harms they face are permanent, while the [defendant] face[s] temporary delay." *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 765 (9th Cir. 2014).

As demonstrated above, Chartwell will suffer irreparable harm if Defendants are permitted to continue to unlawfully solicit its customers and employees. On the other hand, if Defendants are temporarily enjoined, they may continue to do business by any other lawful means, including obtaining new customers through their own contacts.

## VII. THERE IS LITTLE TO NO IMPACT ON THE PUBLIC INTEREST.

The consideration of the public interest is a minimal factor in this case, as the injunction would primarily affect only the parties involved in this case. *See Boardman*, 822 F.3d at 1023–24 (district court considers public interest if "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences" (quotation marks and citations omitted)).

To the extent ramifications exist beyond the parties, the public interest weighs in favor of issuing injunctive relief. If anything, granting the requested injunctive relief would support the public's interests in protecting trade secrets under the CUTSA and DTSA and upholding enforceable confidentiality and non-disclosure agreements between employers and employees. *See Bank of Am., N.A. v. Lee*, 2008 WL 4351348, at *7 (C.D. Cal. Sept. 22, 2008) ("While California has a strong public policy in favor of competition, this interest yields to California's interest in protecting a company's trade secrets."); Congressional Report 114-529, Defend Trade Secrets Act of 2016, at *6 (April 26, 2016) (noting that the DTSA equips

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414

businesses with "the tools they need to effectively protect their intellectual property and ensures continued growth and innovation in the American economy").

## VIII. CONCLUSION

For the foregoing reasons, Chartwell respectfully requests that the Court grant this ex parte application and issue a temporary restraining order as requested by this application and an order to show cause why a preliminary injunction should not be issued pending trial on this matter.

Dated: April 18, 2019

Aileen M. Hunter
Traci G. Choi
**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Traci G. Choi*
Traci G. Choi
Attorneys for Plaintiff
CHARTWELL STAFFING SERVICES INC.

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CALIFORNIA 92612-4414