David W. Affeld, Cal. Bar. No. 123922
    dwa@agzlaw.com
Christopher Grivakes, Cal. Bar No. 127994
    cg@agzlaw.com
Damion Robinson, Cal. Bar No. 262573
    dr@agzlaw.com
Lisa J. Borodkin, Cal. Bar. No. 196412
    lisa@lisaborodkin.com
Affeld Grivakes LLP
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel.:   (310) 979-8700
Fax:   (310) 979-8701

Attorneys for Plaintiffs Atlantic Solutions Group, Inc.,
Adam Kidan, Tony Alanis, Jamie R. Diaz, and Patricia Hanks

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| CHARTWELL STAFFING SERVICES INC., a New York corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ATLANTIC SOLUTIONS GROUP, INC., a Delaware corporation doing business as Empire Workforce Solutions, *et al.*<br><br>Defendants. | Case No.<br>8:19-cv-00642 JLS (JDEx)<br><br>(Lead Case: 8:19-cv-00639)<br><br>Assigned to:<br>The Honorable Josephine L. Staton<br><br>**DEFENDANTS' MOTION TO DISMISS, TO STRIKE, AND FOR A MORE DEFINITE STATEMENT [Fed. R. Civ. P. 12(b)(6), 12(e), 12(f)]; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently:<br>(1)  Declaration of Damion Robinson;<br>(2)  Request for Judicial Notice; and<br>(3)  Proposed Order]<br><br>Date:         August 2, 2018<br>Time:         10:30 a.m.<br>Courtroom:    10A |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 2, 2019 at 10:30 a.m. in Courtroom 10A of the above-entitled Court, or as soon thereafter as the matter may be heard before the Honorable Josephine L. Staton, Defendants Atlantic Solutions Group, Inc. , Adam Kidan, Tony Alanis, Rosa Benavides, Kevin Case, Cathy Clark, Marlene Cornejo, Jamie Diaz, Denise Gonzalez, Patricia Hanks, Ivettelis Nieves, and Nick Rebultan (collectively, the "Empire Parties" or "Defendants") will and hereby do move to dismiss the First Amended Complaint, Dkt. No. 11 (the "FAC"), of plaintiff Chartwell Staffing Services, Inc. ("Chartwell" or "Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6).  This motion is made on the grounds that the FAC fails to state a claim for which relief can be granted:

1.     Plaintiff has failed to state a claim for misappropriation of trade secrets under the Defendant Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 (First Claim) or the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code. § 3426 (Second Claim) because (a) Plaintiff has failed to define its alleged trade secret with the requisite particularity; (b) Plaintiff has not plausibly alleged acts of misappropriation; and (c) Plaintiff has failed to allege facts showing trade secrets "related to a product or service used in, or intended for use in, interstate or foreign commerce" as required by DTSA.

2.     Plaintiff's First and Second Claims are uncertain in that they fail to specify which Defendants are responsible for which acts of alleged misappropriation;

3.     Plaintiff's state law claims for Breach of Fiduciary Duty (Fourth Claim) and Unfair Competition (Fifth Claim) fail to the extent that they overlap with Plaintiff's trade-secrets claims because they are preempted by CUTSA;

4.     Plaintiff's state law claims (Fourth, Fifth, and Sixth Claims) (a) fail to state facts sufficient to constitute a cause of action; and (b) amount to claim splitting;

5.     Plaintiff's claims for punitive damages and attorney's fees are preempted and barred by the DTSA, 18 U.S.C. § 1833(b)(3).

PLEASE TAKE FURTHER NOTICE that, at the same date, time, and location, Defendants will and hereby do more for a more definite statement pursuant to Fed. R. Civ. P. 12(e) on the grounds that the FAC is uncertain as follows:

1.    as to the nature of the trade secret at issue; and

2.    as to which of the multiple Defendants are alleged to have engaged in which acts of alleged misappropriation.

PLEASE TAKE FURTHER NOTICE that, at the same date, time, and location, Defendants will and hereby do move to strike pursuant to Fed. R. Civ. P. 12(f):

1.    Plaintiff's prayer for attorney's fees and punitive damages is barred;

2.    Plaintiff's allegations about Kidan's past business dealings and personal life, including Paragraphs 16, 32 and 75, are immaterial, impertinent, and scandalous;

3.    Plaintiff's vague allegation that Defendants are "[o]therwise using [Plaintiff's] Confidential Information for Empire," FAC ¶ 61(d) is an improper conclusion and not a proper allegation of fact.

Defendants file this combined motion pursuant to Fed. R. Civ. P. 12(g): "A motion under this rule may be joined with any other motion allowed by this rule."

This motion is made after a conference of counsel per to Local Civ. R. 7-3. *See* Robinson Decl. ¶ 2.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of Damion Robinson and Request for Judicial Notice, the records and files herein, and such other matter as the Court may consider.

Dated:  May 10, 2019               Respectfully submitted,


By: s/ David Affeld
    David W. Affeld
    Damion D. D. Robinson
    Affeld Grivakes LLP

Attorneys for Defendants

- 3 -

MOTION TO DISMISS AND STRIKE AND FOR A MORE DEFINITE STATEMENT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................ 4

II.   PLAINTIFF'S ALLEGATIONS ................................................ 6

    A.    Chartwell's Embezzlement Claim is Being Litigated in
        Pennsylvania ............................................................................ 7

    B.    Chartwell's Trade Secrets Claims Are Based on Empire Competing 7

    C.    Chartwell's Legal Theories .................................................... 8

III.  LEGAL STANDARDS ............................................................. 8

    A.    Motion to Dismiss .................................................................. 8

    B.    Motion to Strike .................................................................... 9

    C.    Motion for More Definite Statement ..................................... 9

IV.   ARGUMENT ........................................................................... 10

    A.    Plaintiff's Claims for Trade Secret Misappropriation Fail Because
        Plaintiff Has Not Properly Defined Its Trade Secret or Identified
        the Trade Secret that Defendants Misappropriated ...................... 11

        1.    Plaintiff fails adequately define its trade secret ...................... 12

        2.    Plaintiff fails to identify what was misappropriated .............. 13

        3.    Chartwell fails to plead facts showing that is amorphous
            "trade secret" actually is a trade secret ................................... 13

    B.    Plaintiff Fails to Plausibly Allege Misappropriation ........................ 15

        1.    Chartwell says nothing about the individual defendants ........ 16

        2.    The court should strike any "Trade Secrets" not tied to the
            factual allegations of misappropriation ................................... 16

    C.    Plaintiff's Complaint is Fatally Uncertain and a More Definite
        Statement is Required ................................................................ 17

    D.    Plaintiff's State Law Claims Fail ............................................... 19

        1.    Plaintiff's claims for breach of fiduciary duty and unfair
            competition are preempted to the extent based on
            misappropriation ...................................................................... 19

        2.    Plaintiff fails to state a claim for conversion ........................... 20

        3.    Plaintiff fails to state a claim for unfair business practices .... 21

    D.    Plaintiff Is Improperly Splitting Causes of Action .......................... 22

    E.    Plaintiff's Claims for Punitive Damages and Fees are Barred ........ 24

MOTION TO DISMISS AND STRIKE AND FOR A MORE DEFINITE STATEMENT

F.      Plaintiff's Irrelevant Allegations About Kidan's Prior Business
        Activities and Personal Life Should Be Stricken ............................. 25

V.      CONCLUSION  ........................................................................... 10

MOTION TO DISMISS AND STRIKE AND FOR A MORE DEFINITE STATEMENT

# TABLE OF AUTHORITIES

**CASES**

*In re 2TheMart.com Secs. Litig.,*
  114 F. Supp. 2d 955 (C.D. Cal. 2000)...........................................................9

*Acculmage Diagnostic Corp. v. Terarecon, Inc.,*
  260 F. Supp. 2d 941 (N.D. Cal. 2003)........................................................19

*Adams v. Cal. Dept. of Health Servs.,*
  487 F.3d 684 (9th Cir. 2007)......................................................................23

*Agency Solutions.com v. TriZetto Group, Inc.,*
  819 F. Supp. 2d 1001 (E.D. Cal. 2011)......................................................11

*Ames v. Dep't of Marine Res. Comm'r,*
  256 F.R.D. 22 (D. Me. 2009)......................................................................18

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.,*
  28 Cal. App. 5th 923 (2018)........................................................................14

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.,*
  77 F.3d 364 (11th Cir. 1996)......................................................................18

*Argo Group U.S., Inc. v. Prof'l Govt. Underwriters, Inc.,*
  2014 WL 12577144 (C.D. Cal. Jan. 6, 2014)............................................19

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................*passim*

*Atuahene v. City of Hartford,*
  10 Fed. Appx. 33 (2d Cir. 2001).................................................................17

*Robbins v. Okla. ex rel. Dep't of Human Servs.,*
  519 F.3d 1242 (10th Cir. 2008)..................................................................18

*Becerra v. Gen. Motors LLC,*
  241 F. Supp. 3d 1094 (S.D. Cal. 2017)......................................................22

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...................................................................9, 15, 17

*Bojorquez v. Abercrombie & Fitch Co.,*
  193 F. Supp. 3d 1117 (C.D. Cal. 2016)......................................................23

*Bowles v. Glick Bros. Lumber Co.,*
  146 F.2d 566 (9th Cir.1945).......................................................................10

*Car–Na–Var Corp. v. Moseley,*
  24 Cal.2d 104 (1944)..................................................................................15

*Cel-Tech Commc'ns, Inc. v. L.A. Cell. Tel. Co.,*
  20 Cal. 4th 163 (1999)................................................................................21

MOTION TO DISMISS AND STRIKE AND FOR A MORE DEFINITE STATEMENT

*Clark v. McDondalds Corp.*,
   213 F.R.D. 198 (D.N.J. 2003). ............................................................18

*Computer Sciences Corp. v. Computer Assocs. Int'l, Inc.*,
   1999 WL 675446 (C.D. Cal. Aug. 12, 1999) .......................................16

*Consumer Solutions REO, LLC v. Hilery*,
   658 F. Supp. 2d 1002 (N.D. Cal. 2009).............................................9,25

*Corbell v. Norton*,
   224 F.R.D. 1 (D.D.C. 2005) .................................................................9

*Cox v. Maine Maritime Acad.*,
   122 F.R.D. 115 (D. Me. 1988)...............................................................9

*Danjaq LLC v. Sony Corp.*,
   1999 WL 317629 (C.D. Cal. Mar. 11, 1999) ......................................16

*Digital Envoy, Inc. v. Google, Inc.*,
   370 F. Supp. 2d 1025 (N.D. Cal. 2005)................................................19

*Diodes, Inc. v. Franzen*,
   260 Cal. App. 2d 244 (1968) ...............................................................11

*Farmers Ins. Exchange v. Superior Court*,
   2 Cal. 4th 377 (1992).........................................................................21

*Federal Sav. and Loan Ins. Corp. v. Musacchio*,
   695 F. Supp. 1053 (N.D. Cal. 1988)....................................................10

*In re Gottheiner*,
   703 F.2d 1136 (9th Cir. 1983). ...........................................................23

*Imax Corp. v. Cinema Techs., Inc.*,
   152 F.3d 1161 (9th Cir. 1998) ............................................................11

*Jordan v. Carter*,
   428 F.3d 67 (1st Cir. 2005)..................................................................18

*K.C. Multimedia, Inc. v. Bank of America Tech. & Ops., Inc.*,
   171 Cal.App.4th 939 (2009)................................................................19

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009). ............................................................22

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 .....................................................................................16

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011)...................................................................10, 22

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) ............................................................21

*Mattel, Inc. v. MGA Ent'mt, Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011)......................................11, 12, 13

MOTION TO DISMISS AND STRIKE AND FOR A MORE DEFINITE STATEMENT

*McHenry v. Renne*,
  84 F.3d 1172 (9th Cir. 1996) ............................................................... 18

*McKell v. Wash. Mut., Inc.*,
  142 Cal. App. 4th 1457 (2006) .......................................................... 20

*MedioStream, Inc. v. Microsoft Corp.*,
  689 F. Supp. 2d 1095 (N.D. Cal. 2012) ............................................ 10

*Michelson v. Hamada*,
  29 Cal. App. 4th 1566 (1994) ............................................................ 20

*Palmer v. Dep't of Treasury*,
  53 F. App'x 455 (9th Cir. 2002) ........................................................ 16

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
  150 Cal. App. 4th 384 .......................................................................... 20

*Pellerin v. Honeywell Int'l, Inc.*,
  877 F. Supp. 2d 983 (S.D. Cal. 2012). .............................................. 11

*Pollara v. Radiant Logistics, Inc.*,
  2014 WL 12584445 (C.D. Cal. Aug. 5, 2014), .................................. 16

*Rees v. PNC Bank, N.A.*,
  308 F.R.D. 266 ...................................................................................... 24

*Scott v. Snelling & Snelling, Inc.*,
  732 F. Supp. 1034 (N.D. Cal. 1990) .................................................. 16

*Sidney-Vinstein v. A.H. Robins Co.*,
  697 F.2d 880 (9th Cir. 1983) ............................................................... 9

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App. 4th 210 .......................................................................... 10

*Slinger v. Prospect Mortg., LLC*,
  789 F. Supp. 2d 1212 (E.D. Cal. 2011) ............................................ 17

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*,
  49 Cal. App. 4th 472 (1996) .............................................................. 21

*Space Data Corp. v. X*,
  2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ........................... 11, 12

*Sprewell v. Golden State Warriors*,
  266 F.3d 978 (9th Cir. 2001). ............................................................. 9

*Susilo v. Wells Fargo Bank, N.A.*,
  796 F. Supp. 1177 (C.D. Cal. 2011) ................................................. 24

*Syngenta Crop. Protection., Inc. v. Helliker*,
  138 Cal. App. 4th 1135 (2006). ........................................................ 11

*Tapley v. Lockwood Green Eng'rs*,
  502 F. 2d 559 (8th Cir. 1974) ............................................................ 24

MOTION TO DISMISS AND STRIKE AND FOR A MORE DEFINITE STATEMENT

*Taylor v. Sturgell,*
    553 U.S. 880 (2008)....................................................................23

*Teamsters Local 617 Pension & Funds v. Apollo Group, Inc.,*
    633 F. Supp. 2d 763 (D. Ariz. 2009) ...........................................18

*U.S. ex rel Garst v. Lockheed-Martin Corp.,*
    328 F.3d 374 (7th Cir. 2003) ........................................................13

*United States v. Haytian Republic,*
    154 U.S. 118 (1894)......................................................................22

*Van Dyke Ford, Inc. v. Ford Motor Co.,*
    399 F. Supp. 277 (E.D. Wis. 1975) ..............................................18

*Vendavo, Inc. v. Price f(x) AG,*
    2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ..............................11

*Vu v. California Commerce Club, Inc.,*
    58 Cal. App. 4th 229 (1997) ...................................................20, 21

*Wagner v. First Horizon Pharma. Corp.,*
    464 F.3d 1273 (11th Cir. 2006). ...................................................18

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.,*
    178 F. Supp. 2d 1099 (C.D. Cal. 2001). .......................................22

*Western Sys., Inc. v. Uloa,*
    958 F.2d 864 (9th Cir. 1992). .......................................................23

*Whittlestone, Inc. v. Handi-Craft Co.,*
    618 F.3d 970 (9th Cir. 2010). .......................................................24

**STATUTES**

18 U.S.C. § 1833(b) ..........................................................................24, 25

18 U.S.C. § 1836(b) ................................................................................14

18 U.S.C. § 1838.....................................................................................24

18 U.S.C. § 1839(3) ..........................................................................10, 13

Cal. Bus. & Prof. Code § 17200 ......................................................19, 21

Cal. Bus. & Prof. Code § 17204 .............................................................22

Cal. Civ. Code § 1812.501(a) .................................................................14

Cal. Civ. Code § 3426.1(d) ..............................................................10, 13

Cal. Civ. Code § 3426.7 ..........................................................................19

Cal. Civ. Code § 16607............................................................................14

MOTION TO DISMISS AND STRIKE AND FOR A MORE DEFINITE STATEMENT

**RULES**

Fed. R. Civ. P. 12(b)(6). ........................................................................8

Fed R. Civ. P. 12(e). ...........................................................................9

Fed. R. Civ. P. 12(f). ...........................................................................9

Fed. R. Civ. P. 9(b). .........................................................................22

**OTHER**

M. Lemley, *The Surprising Virtues of Treating Trade Secrets as IP Rights*,
61 Stan. L. Rev. 311, 344 (2008)) ........................................................22

MOTION TO DISMISS AND STRIKE AND FOR A MORE DEFINITE STATEMENT

## **MEMORANDUM OF POINTS AND AUTHORITIES**

# **I.   INTRODUCTION**

The Court should dismiss Chartwell's First Amended Complaint ("FAC") because it fails to state a claim under basic trade-secrets law and basic pleading standards.[1]  Chartwell asks the Court to speculate that all nine Empire Parties must have all misappropriated trade secrets.  Its sole basis for this assertion is that some former Chartwell employees who now work at Empire had access to purportedly-confidential information while they worked at Chartwell, and Empire competes in the same market as Chartwell for the same customers and employees.  This does not make out a plausible, non-speculative misappropriation claim.  Courts in California and the Ninth Circuit have rejected this theory of "inevitable" misuse of trade secrets.

For all of its bluster, the FAC fails to state basic facts required to plead misappropriation – *i.e.*, what was stolen, who stole it, and how they are misusing it.  Chartwell must define the specific trade secret that it accuses the Empire Parties of misappropriating.  It must also state facts supporting a reasonable inference the Empire Parties—including all eight individual defendants—are misusing the information in some way.   It is not enough to merely show that Empire competes with Chartwell, which is all Chartwell alleges.  Chartwell refers to a generic, amorphous list of "confidential information," and asserts in conclusory fashion, "[u]pon information and belief," that the Empire Parties misappropriated some of it and that the eight individual defendants "conspired" in an unspecified way.

This is not how trade-secrets litigation is supposed to work.  The trade-secret laws are not meant as a weapon to bludgeon competitors or to stop employees from changing jobs.  A former employer is not entitled to sue first and figure out later if it has claims, what they are, and who they are against.  Instead, this lawsuit is part and parcel of an anti-competitive strategy by Chartwell, a nationwide company, to put its upstart competitor, Empire, out of business. After Empire's founder declined

---

[1] Defined terms herein have the meanings set out in the Notice of Motion.

$1,000,000 for an agreement not to compete with Chartwell, Chartwell has spent the past two months trying to smother Empire by anti-competitive conduct and frivolous litigation.  Its FAC, like its other anti-competitive conduct, defies settled law.

*First*, Chartwell's claims for misappropriation fail under the DTSA and CUTSA because Chartwell has not identified a trade secret with the required specificity.  To prevent trade secrets law from stifling competition, both state and federal courts require a plaintiff to clearly articulate the trade secret *that it claims the defendant misappropriated*.  It is not enough to plead a trade secret in the abstract.  Chartwell does not even do this, however.  It asserts a laundry list of generic information that it deems confidential without facts showing that any of it—much less all of it—meets the statutory definition of a trade secret.  It provides no specifics about the information at issue.  It fails to identify what part of this vast list it believes the Empire Parties misappropriated.  This shotgun style assertion of a trade secret deprives the Empire Parties of fair notice of what they are expected to defend.

*Second*, Chartwell fails to allege facts supporting a plausible claim that anyone misappropriated the information.  It asserts that one Chartwell employee, Jamie Diaz ("Diaz"), ***while still employed with Chartwell***, accessed a database that had confidential information in it.  The remainder of the allegations are pure speculation.  Chartwell wants the Court to assume, without support, that Diaz must have downloaded the data, transferred it to Empire, and that Empire is using it in some unspecified way based solely on the fact that Empire is competing.  It says nothing about the other seven Empire employees it has sued.  Even at the pleading state, the Court cannot accept these logical leaps and unsupported conclusions as fact.

*Third*, Chartwell's misappropriation claims are fatally uncertain.  It does not allege which of the nine defendants stole its trade secrets, what trade secrets they allegedly stole, or how they are using those trade secrets.  Instead, it chose to sue a raft of individual employees without specifying who did what.  This improper "gang pleading" renders the FAC defective.  At minimum, Chartwell is required to plead

what each defendant is alleged to have done wrong.

*Fourth*, Chartwell's pendent state law claims are preempted and inadequately pled.  Under California law, all claims arising from the alleged theft of trade secrets are preempted by CUTSA.  A party who cannot establish misappropriation under CUTSA cannot end-run CUTSA by giving its claim another name.  Moreover, Chartwell fails to allege facts sufficient to state a claim under its state-law theories.

*Fifth*, Chartwell's claims for conversion and breach of fiduciary duty are subject to an ongoing divorce proceeding in Pennsylvania between the shareholders of Chartwell.  Chartwell brings the exact same claims that are being litigated in that proceeding.  The doctrine of claim splitting prevents Chartwell from asking this Court to re-litigate this divorce proceeding.

*Sixth*, and finally, Chartwell cannot recover punitive damages or attorney's fees and its prayer for these remedies must be dismissed.  Chartwell failed to provide the mandatory whistleblower "safe harbor" notice required by the DTSA.  The DTSA is clear that the remedy for this failure is to bar claims for punitive damages or fees.

This is the quintessential effort to use the trade secrets statutes to stifle competition.  Chartwell has preemptively asserted vast, fact-free claims against numerous defendants without a plausible basis.  In essence, Chartwell sued on the mere fact that Empire is competing.  Its claims are so amorphous that they deprive the Empire Parties of fair notice of the nature of the lawsuit.

This is not by accident.  The Federal Rules do not permit this sue-first-ask-questions-later approach.  If Chartwell has viable claims—and it does not—it should plead them before dragging Empire and eight individual defendants through costly discovery, motion practice, and trial.

## II.   PLAINTIFF'S ALLEGATIONS

Empire and Chartwell are competitors in the staffing industry.  FAC ¶¶ 17, 49.  Chartwell is a national staffing agency among the largest in the country.  FAC ¶ 17.

MOTION TO DISMISS AND STRIKE AND FOR A MORE DEFINITE STATEMENT

Empire is a startup company, which began operations two months ago.  FAC ¶ 43.

Adam Kidan ("Kidan") is the founder of both Chartwell and Empire.  FAC ¶ 38.  His estranged wife, Tracy Kidan, is the sole shareholder of Chartwell, subject to Kidan's marital interest in the stock.  FAC ¶ 17.

In March 2019 Kidan left Chartwell after an intra-corporate dispute arose from his pending divorce with Tracy Kidan.  FAC ¶ 43.  Tracy Kidan and company management, working in concert with her, effectively forced Kidan out of the company he founded.  After he left Chartwell, Kidan started Empire.  FAC ¶ 43.

## A.    Chartwell's Embezzlement Claim Is Being Litigated in Pennsylvania.

Chartwell claims that Kidan improperly used funds from Chartwell for his personal use.  Among other things, it alleges that Kidan used company funds and credit cards for personal expenses, paid his then-girlfriend using company funds, received a salary advance that he has not fully repaid, and hired on an employee who did not work.  FAC ¶¶ 28-33.  Chartwell also accuses Kidan of taking cash advances for personal use.  *Id.* ¶¶ 34-37.[2]

This conduct is being litigated in a Pennsylvania matrimonial proceeding between Kidan and Tracy Kidan.  In particular, Tracy Kidan accused Adam Kidan of misusing the same company funds in the divorce, based on the same allegations contained in the FAC.  *See* Request for Judicial Notice, Ex. 1.[3]  Kidan and Tracy Kidan entered into an agreed order prohibiting both of them from using company funds for personal use, except as needed to preserve the *status quo* pending a resolution of the divorce case.  *Id.*, Ex. 2.

## B.    Chartwell's Trade Secrets Claims Are Based on Empire Competing.

Chartwell alleges that Kidan spoke with employees of Chartwell about his new company, Empire, while he was still an officer of Chartwell.  FAC ¶ 40.  It alleges

---

[2] These allegations are, in reality, patently false.  The "cash advances" were used by Chartwell for Chartwell's business.  Nonetheless, Kidan accepts the allegations in the FAC as true for purposes of this motion although he does not admit those allegations.

[3] *See Sprewell*, 266 F.3d at 988 (court may consider matters subject to judicial notice on a Rule 12 motion).

MOTION TO DISMISS AND STRIKE AND FOR A MORE DEFINITE STATEMENT

that at least six of these employees left Chartwell to join him at Empire.  *Id.* ¶ 43.

"Upon information and belief," Chartwell alleges that Diaz "acted in concert" with the other Empire Parties, "in improperly accessing and transmitting trade secret information belonging to Chartwell."  FAC ¶ 44.  The FAC fails to articulate how or to whom Diaz supposedly "transmitted[] this information."  Instead, the FAC alleges that Diaz, *while still employed at Chartwell*, "logged into [a] database containing Chartwell's list of temporary customers and temporary employees."  *Id.* ¶ 43.[4]

Chartwell does not state how Empire is allegedly using this information.  It asserts—again "[u]pon information and belief—that the Empire Parties "have been contacting customers of Chartwell" and employees working for those customers, encouraging them to terminate their contracts with Chartwell.  FAC ¶¶ 49-55.  It does not tie these allegations to any use of the information Diaz allegedly downloaded.

### C.   Chartwell's Legal Theories

Based on these allegations, Chartwell asserts:  (a) trade secret misappropriation under the DTSA against all of the Empire Parties (First Claim); (b) trade secret misappropriation under CUTSA against all of the Empire Parties (Second Claim); (c) conversion against Kidan (Third Claim); (d) breach of fiduciary duties against Kidan (Fourth Claim); and (e) unfair competition under California Business & Professions Code § 17200, *et seq.* (the "UCL") against all of the Empire Parties (Fifth Claim).

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss

The Court must dismiss a complaint if it fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a claim the "complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To be plausible,

---

[4] As has been shown in the party's injunction briefing, Diaz only accessed insurance information requested by a customer and sent it to him.  Chartwell has not disputed or offered any rebuttal evidence on this point.  Nonetheless, the Empire Parties accept Chartwell's allegation as true for purposes of this motion only.

the complaint must state facts going beyond a "sheer possibility that a defendant acted unlawfully." *Id.*  Allegations that are "merely consistent with" liability are insufficient.  *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In considering whether the complaint states a claim, courts must accept the well-pleaded factual allegations as true, but reject "legal conclusions." *Iqbal*, 556 U.S. at 678.  The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 978, 988 (9th Cir. 2001).

**B.    Motion to Strike**

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The purpose of Rule 12(f) "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

The court has discretion to strike needless and irrelevant attacks "on the moral character of an individual" and allegations that "cast a cruelly derogatory light on a party or other person," without a material connection to the legal claims. *Consumer Solutions REO, LLC v. Hilery*, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) (quoting *Corbell v. Norton*, 224 F.R.D. 1, 5 (D.D.C. 2005); *In re 2TheMart.com Secs. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

**C.    Motion for More Definite Statement**

A more definite statement is required if the complaint "is so vague or ambiguous that the [defendant] cannot reasonably prepare a response."  Fed R. Civ. P. 12(e).  A motion for more definite statement is appropriate where the complaint is unintelligible or unduly vague. *See Cox v. Maine Maritime Acad.*, 122 F.R.D. 115, 116 (D. Me. 1988).  It should be granted where the complaint fails to provide sufficient information to "enable [the defendant] to answer or prepare for trial." *Bowles v. Glick Bros. Lumber Co.*, 146 F.2d 566, 568 (9th Cir.1945); *Federal Sav.*

*and Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1060 (N.D. Cal. 1988).

## IV.   <u>ARGUMENT</u>

**A.    Plaintiff's Claims for Trade Secret Misappropriation Fail Because Plaintiff Has Not Properly Defined Its Trade Secret or Identified the Trade Secret that Defendants Misappropriated.**

On the most basic level, a trade secret claim requires the plaintiff to identify the trade secret that the defendant misappropriated.  A plaintiff must "clearly define what it claims to own, rather than (as happens all too often in practice) falling back on vague hand waiving." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 221 (quoting M. Lemley, *The Surprising Virtues of Treating Trade Secrets as IP Rights*, 61 Stan. L. Rev. 311, 344 (2008)) (disapproved on other grounds in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)).  "It is critical . . . that the information claimed to have been misappropriated by clearly identified." *Id.*   In other words, the plaintiff must not only identify some trade secret, but clearly state what specific trade secret the defendant wrongfully took or wrongfully used. *Id.*; *MedioStream, Inc. v. Microsoft Corp.*, 689 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012).

This basic requirement is essential to allow a fair defense.  The entire case for misappropriation rises or falls on a properly defined trade secret.  If the plaintiff fails to provide a clear definition, it is impossible to tell whether the alleged secret meets the statutory criteria – *i.e.*, information subject to reasonable measures to protect it, which derives independent value from secrecy.  18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d).  A defendant also cannot be expected to mount a defense to misappropriation – *e.g.*, independent creation, or acquisition through proper means – without knowing what it is accused of taking.

Chartwell has not met this basic standard.  It has not properly defined a trade secret in the first instance.  Nor has it identified what portion of its alleged "trade secret" the Empire Parties misappropriated.  Its trade secret claims fail on this basis.

### 1.   Plaintiff Fails to Adequately Define Its Trade Secret.

The plaintiff must define its trade secrets with enough specificity to put the defendant on notice of what the plaintiff claims the defendant misappropriated. *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012).  While it is not required to spell out the intimate details of its trade secret on the public docket,

> [t]o prevent employers from using trade secret law as a weapon against employee mobility, California requires that a party seeking to protect trade secrets describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit defendant to ascertain at least the boundaries within which the secret lies.

*Mattel, Inc. v. MGA Ent'mt, Inc.*, 782 F. Supp. 2d 911, 967-68 (C.D. Cal. 2011) (citations, modifications, and quotation marks omitted); *see also Pellerin*, 877 F. Supp. 2d at 988 (citing *Diodes, Inc.*) (dismissing trade secrets claim for failure to sufficiently define trade secret).  The plaintiff has the "burden of identifying for the court' exactly what information was claimed to be a trade secret." *Agency Solutions.com v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011) (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167-68 (9th Cir. 1998)); *Syngenta Crop. Protection., Inc. v. Helliker*, 138 Cal. App. 4th 1135, 1173 (2006).

The trade secret must be identified with reasonable specificity.   "Conclusory and generalized allegations" are insufficient. *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018).  A party cannot resort to "high-level overviews" instead of specifics. *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017).  It may not point to a laundry list of assertedly confidential information, and ask the Court to "hunt through the details in search of terms meeting the statutory definition" of trade secrets. *Mattel, Inc.*, 782 F. Supp. 2d at 967-68.

Chartwell fails this test.  It asserts its purported trade secret in a boundless and ill-defined manner:

> confidential information not available to the public, ***including but not limited to*** Chartwell's customer lists, including information relating to customers' business affairs, special needs, preferred methods of doing business, methods of operation, key contact personnel, job order specifications and the particular characteristics and requirements of persons generally hired by a client, specific job listings, mailing lists, computer runoffs, financial and other information; employee information, including the names, addresses, telephone numbers, qualifications, education, accomplishments, experience, availability, resumes and other data regarding persons who have applied or been recruited for temporary or permanent employment; as well as Chartwell's manuals, methods, forms, techniques and systems, developed for its own use and/or use by its customers[.]

FAC ¶ 58 (emphasis added).  A more generic and amorphous definition would be hard to imagine.   Chartwell does not define the "boundaries" of its trade secret.  Instead, it expressly alleges that its so-called "trade secret" is "not limited to" even the broad, boilerplate categories it articulates.

The purported trade secret consists of every bit of business information that Chartwell could think of that might be considered confidential, "including but not limited to," 27 equally generic sub-categories.   While some information falling within this broad definition could conceivably constitute a trade secret in some circumstances, all of it surely does not.  This is the definition of a "high-level overview" in need of specifics.  *Space Data*, 2017 WL 5013363, at *2.

Chartwell's definition does not give the Empire Parties basic notice about what this mass of generic business information actually represents or what Chartwell believes they stole.  It apparently wants the Empire Parties and the Court to sift

through the entire list and somehow divine (a) what the list means in terms of actual business information in Chartwell's possession; (b) what portion of it "meets the statutory definition" of a trade secret; and (c) what Empire allegedly misappropriated. *Mattel, Inc.*, 782 F. Supp. 2d at 967-68. This "vague hand waiving" is improper and requires dismissal.

## 2.   Plaintiff Fails to Identify What Was Misappropriated.

Chartwell also fails to allege what part of this mass of business data the Empire Parties allegedly misappropriated. It says little about what parts of the supposed "Confidential Trade Secret Information" they supposedly took. It says nothing about what portions it accuses the Empire Parties of misusing. Making matters worse, it generically asserts that all nine of the Empire Parties are "[o]therwise using Chartwell's Confidential Information for Empire,"[5] FAC ¶ 61(d), without specifying what information, or how they are "otherwise using" it.

Basic pleading standards require that Empire and the Court not be left to guess. As its conduct has already proven, Chartwell has intentionally defined its "trade secret" so broadly that it can decide as it goes along what it will accuse Empire of stealing. It has deprived the Empire Parties—and this Court—of fair notice of what this case is about. *See U.S. ex rel Garst v. Lockheed-Martin Corp*, 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud").

## 3.   Chartwell Fails to Plead Facts Showing that Its Amorphous "Trade Secret" Actually Is a Trade Secret.

Information is not a trade secret simply because Chartwell says so. In order to constitute a trade secret, information must be subject to "reasonable measures to keep such information secret," and it must "derive independent economic value" by virtue of being secret. 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d). Chartwell fails to state facts showing that the information—much less all 27 "including but not limited

---

[5] It is unclear if Chartwell uses "Confidential Information" to mean the same thing as trade secrets.

to" categories—meets this definition.  It simply asserts that the information constitutes a trade secret.  This "mere conclus[ion]" is insufficient.  *Iqbal*, 556 U.S. at 678.

California Civil Code § 16607 does not salvage Chartwell's claim.  As an initial matter, section 16607 does not apply to the DTSA.  More fundamentally, it does not apply to Chartwell.  Section 16607(a) only makes customer lists a trade secret if they are owned by "an employment agency."   An "employment agency" is a company hired by prospective "jobseeker[s]" to find them jobs.  *See* Cal. Civ. Code § 1812.501(a) ("consideration to be paid, directly or indirectly ***by a jobseeker***.")  The main feature of an "employment agency" is that its customers are *employees* looking for jobs.  *Id.* ("main object[] or purpose" is procuring employment "for any person who will pay for its services . . . to secure employment").  Chartwell repeatedly alleges that it is a staffing company, not an employment agency.

Chartwell specifically alleges that its customers are businesses for which it provides "temporary staff," rather than "jobseeker[s]."  FAC ¶ 42 ("list of customers and list of temporary employees Chartwell placed").  Temporary staff are Chartwell's employees, not its customers.  *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 944 (2018).  An agency that provides temporary staff is a staffing agency, not an employment agency.  *Id.*  Chartwell fails to plead facts—as opposed to conclusions—showing that it meets the statutory definition.

Finally, Chartwell fails to meet the jurisdictional standard for the DTSA.  The DTSA only applies to misappropriation of trade secrets "related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).  Chartwell does not identify a single employee that it has staffed "across state lines."  FAC ¶ 60.  Its services are completely local in nature – *i.e.*, connecting employees and businesses within the same state.  The fact that Chartwell has offices in multiple states does not mean it provides staffing services in interstate commerce. //

**B.     Plaintiff Fails to Plausibly Allege Misappropriation**

- 14 -

Chartwell has also failed to plausibly allege that the Empire Parties have misappropriated its trade secrets.  Chartwell's theory is based entirely on the fact that Diaz accessed a database containing Chartwell's customer and employee lists *while she still worked for Chartwell*, and Empire has subsequently contacted certain customers and employees of Chartwell.  FAC ¶¶ 42, 61.  Chartwell asks the Court to infer from these two facts that the nine Empire Parties must all be using Chartwell's trade secrets.  *Twombly* and *Iqbal* do not permit this speculation.

Chartwell has alleged no facts actually showing misappropriation.  It fails to allege that Diaz wrongfully gained access to the database, which she routinely used in her work.  It fails to allege that she transmitted any information to Empire.  It does not identify any trade secret information in the Empire Parties' possession, much less any that they are using.

Chartwell's thin, unconnected allegations do not make out a plausible claim for relief.  A complaint must contain *facts*—not conclusions— "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (factual allegations must create more than a "suspicion [of] a legally cognizable right of action").  Chartwell does nothing to tie Diaz's access to data that she had a right to access while she worked at Chartwell to any misuse by the Empire Parties—much less misuse by the nine defendants it has sued.  The FAC does not allege that Empire is using the supposed trade-secret customer and employee lists in any fashion.  FAC ¶ 61.  It says nothing about any misappropriation of the other 25 generic sub-categories of purported trade secret information identified in its FAC.

Chartwell's supposition of misappropriation is no more plausible than the "obvious alternative explanation" that Empire is contacting customers in the market and properly competing for customers with whom its staff have long-term relationships.  *Iqbal*, 556 U.S. at 682 (citing *Twombly*); *see also Car–Na–Var Corp. v. Moseley*, 24 Cal.2d 104, 110 (1944) ("[a] former employee has the right to engage in a competitive business . . . even for the business of those who had formerly been

customers of his former employer"); *Pollara v. Radiant Logistics, Inc.*, 2014 WL 12584445 (C.D. Cal. Aug. 5, 2014), aff'd 650 F. App'x 372 (9th Cir. 2016); *Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034, 1044-45 (N.D. Cal. 1990).  It fails to "nudge" its claim "across the line from conceivable to plausible".  *Id.* at 680; *id.* at 696 ("stops short of the line between possibility and plausibility").

Instead, without saying so, Chartwell asks this Court to adopt an inference of "inevitable" misuse – *i.e.*, because Diaz had access to the data while at Chartwell, it is unavoidable that Empire will use it.  The Court cannot adopt this inference.  *Danjaq LLC v. Sony Corp.*, 1999 WL 317629, at *1 n.1 (C.D. Cal. Mar. 11, 1999); *see also Flir Sys.*, 174 Cal. App. 4th at 1277.  Inevitable disclosure "is not the law of the State of California or the Ninth Circuit."  *Danjaq LLC*, 1999 WL 317629, at *1 n.1; *Computer Sciences Corp. v. Computer Assocs. Int'l, Inc.*, 1999 WL 675446, at *6 (C.D. Cal. Aug. 12, 1999); *Bayer*, 72 F. Supp. 2d at 1119 (same).

### 1.    Chartwell Says Nothing About the Individual Defendants

Chartwell states no facts about the conduct of the the seven named defendants other than Diaz and Empire.  Its three-word assertion that they "act[ed] in concert" is a pure conclusion.  *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 ("[a] bare allegation of a conspiracy is almost impossible to defend against"); *Palmer v. Dep't of Treasury*, 53 F. App'x 455 (9th Cir. 2002) (affirming dismissal where "complaint contained only conclusory allegations of conspiracy and failed to attribute specific wrongful conduct to any individual defendant").   It has completely failed to state a claim against the individual defendants.

### 2.    The Court Should Strike any "Trade Secrets" Not Tied to the Factual Allegations of Misappropriation.

After focusing on its customer and employee lists, Chartwell asserts in generic fashion that the Empire Parties are "[o]therwise using Chartwell's Confidential Information for Empire," without specifying which trade secrets or how.  FAC ¶ 61(c).  This is not a fact supporting a claim for relief.

Instead, it is hedge to allow Chartwell to continue changing its claim as the case progresses. The Court must disregard this generic conclusion. *Iqbal*, 556 U.S. at 678. It should strike this allegation to prevent Chartwell from continuing to move the target, depriving the Empire Parties of fair notice of its claims. *Slinger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011) (motion to strike may be proper "if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of issues").

**C.  Plaintiff's Complaint is Fatally Uncertain and a More Definite Statement Is Required.**

Even if Chartwell had stated a plausible claim for misappropriation against someone—and it has not—its FAC is too uncertain to allow the Empire Parties to figure out who Chartwell accuses of doing so. It totally fails to identify who allegedly misappropriated what. A more definite statement is needed for three reasons.

As an initial matter, Chartwell has not defined its trade secret with adequate particularity.

Further, the FAC resorts to improper "gang pleading" by lumping all of the Empire Parties together without alleging who did what. The FAC alleges that "*Defendants* misappropriated Confidential Trade Secret Information," followed by a list of general acts constituting alleged misappropriation without saying who engaged in these acts. FAC ¶ 61. It is impossible to decipher which of the 10 named defendants and 10 "Doe" defendants Chartwell claims misappropriated its trade secrets or how it believes they did so. *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy this minimum standard"); *cf. Twombly*, 550 U.S. at 565 (complaint is defective if it "mention[s] no specific time, place, or person involved" in the tortious conduct).

Courts have repeatedly held that a more definite statement is required, where it is impossible to tell "which wrongs were committed by which defendants." *McHenry*

*v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996); *see also Atuahene*, 10 F. App'x at 34; *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008). "Specific identification of the parties to the activities alleged . . . is required . . . to enable the defendant to plead intelligently." *Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F. Supp. 277, 284 (E.D. Wis. 1975) (granting motion, noting that complaint identified "plaintiffs" and "defendants," "without indicating which of the five plaintiffs or nine defendants are intended"). A plaintiff may not name countless defendants on speculation, but must have a good faith basis for naming each one. *Ames v. Dep't of Marine Res. Comm'r*, 256 F.R.D. 22, 24 (D. Me. 2009).

Finally, the FAC also resorts to improper "shotgun" pleading, which has been equally condemned. "Shotgun" pleadings simply incorporate each prior factual allegation by reference in each subsequent claim. *Teamsters Local 617 Pension & Funds v. Apollo Group, Inc.*, 633 F. Supp. 2d 763, 783 (D. Ariz. 2009); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996); *Clark v. McDondalds Corp.*, 213 F.R.D. 198, 233 (D.N.J. 2003). A defendant is "expected to move," for a more definite statement when faced with a shotgun pleading. *Anderson*, 77 F.3d at 366 (characterizing case as "perfect example" where complaint contained six nested counts incorporating the prior counts); *see also Jordan v. Carter*, 428 F.3d 67, 75 (1st Cir. 2005) (argument is waived if defendant fails to make Rule 12(e) motion). Indeed, the Court can and should order a more definite statement *sua sponte* where the plaintiff misuses incorporation by reference. *Wagner v. First Horizon Pharma. Corp.*, 464 F.3d 1273, 1275 (11th Cir. 2006).

Here, in addition to failing to specify the who, what, when, or how of misappropriation, Chartwell incorporates all of its general allegations, some of which have nothing to do with on misappropriation, into each cause of action. It then asserts "Defendants," generally, misappropriated its trade secrets, supported only by generic conclusions. FAC ¶ 61. The Empire Parties have no idea what they are required to defend. A more definite statement is needed.

**D.     Plaintiff's State Law Claims Fail**

**1.     Plaintiff's Claims for Breach of Fiduciary Duty and Unfair Competition are Preempted to the Extent Based on Misappropriation.**

CUTSA "occupies the field in California" with respect to all claims arising from alleged misappropriation of confidential information. *Acculmage Diagnostic Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 953 (N.D. Cal. 2003); *K.C. Multimedia, Inc. v. Bank of America Tech. & Ops., Inc.*, 171 Cal.App.4th 939, 954 (2009) (quoting *Acculmage*).  Civil Code § 3426.7 "implicitly preempts alternative civil remedies based on trade secret misappropriation." *K.C. Multimedia*, 171 Cal.App.4th at 954 (citation omitted).

Any claim that is "based on the same nucleus of facts as the misappropriation of trade secrets claim" is barred. *Id.* at 954-955 (citing *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005).  This includes common law claims for breach of fiduciary duties and common law and statutory unfair competition under Business & Professions Code § 17200.  *See id.* at 960-61 (breach of confidence, unfair competition under section 17200); *Digital Envoy*, 370 F. Supp. 2d at 1035 (unfair competition under section 17200); *Argo Group U.S., Inc. v. Prof'l Govt. Underwriters, Inc.*, 2014 WL 12577144, at *3-4 (C.D. Cal. Jan. 6, 2014).

Chartwell's breach of fiduciary duty claim specifically alleges that Kidan "acted against Chartwell's interest in directing other Defendants named herein to aid and abet him in soliciting employees and customers by, among other things, taking and using Confidential Trade Secret Information." FAC ¶ 92.  Chartwell further alleges under the UCL that the Empire Parties engaged in unfair business practices by soliciting Chartwell's customers and employees – *i.e.*, the same conduct underpinning its misappropriation claims.  *Compare* FAC ¶ 69 (alleging conduct under trade secrets claim) *and* FAC ¶ 98 (alleging same conduct under section 17200 claim).  Chartwell's fiduciary duty and UCL claims rely on the same "nucleus of operative facts" as its misappropriation claim and are barred to the extent they do so.

## 2.    Plaintiff Fails to State a Claim for Conversion

Conversion is the civil equivalent of theft.  *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 ("[t]he gravamen of the tort is the defendant's hostile act of dominion or control over a specific chattel").  It requires that the defendant take or otherwise interfere with plaintiff's possession of specific personal property.  *Id.*

A "generalized claim for money [is] not actionable as conversion."  *Vu v. California Commerce Club, Inc.*, 58 Cal. App. 4th 229, 235 (1997).  A conversion claim is proper only if the plaintiff identifies a specific, identifiable sum that the defendant held for the plaintiff's benefit.  *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1491 (2006)  ("Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment"); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1589 (1994) (conversion requires a "specific, definite sum capable of identification").  "Money can only be treated as specific property subject to being converted where it is identified as a specific thing." *PCO, Inc.*, 150 Cal. App. 3d at 395 (duffle bags full of cash).

 The plaintiff must allege both (a) the sum certain and "capable of identification," and (b) that the defendant held the funds effectively in trust for the plaintiff.  *McKell*, 142 Cal. App. 4th 1491 (affirming dismissal of conversion claim on the pleadings); *see also Michelson*, 29 Cal. App. 4th at 1589 (1994) (conversion requires a "specific, definite sum capable of identification"); *PCO, Inc.*, 150 Cal. App. 4th at 396 ("specific funds held for the benefit of others").

Chartwell's allegations about Kidan using company resources for personal benefit is a claim for money damages, not a claim for conversion of a specific, identifiable fund.  At best it claims that, at various times over the years, Kidan misused "approximate[]" amounts of money and credit, obtained a "pay advance" that he has not repaid fully, and obtained cash advances in "approximate" amounts.  FAC

¶ 75.  This does not amount to conversion.  *See Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 485 (1996) (affirming dismissal on pleadings of conversion claim based on funds coming into account "over time, in various sums").  As the FAC makes clear, all of the amounts—whether money, credit, or advances—are "approximate."  *Id.*  ("Kidan withdrew *approximately* $12,000"; "Kidan expensed *approximately* $76,764.71").  No identifiable sum is alleged.  *See Vu*, 58 Cal. App. 4th at 235 (affirming summary judgment where plaintiffs lost "approximately $1.4 million" and "approximately $120,000").  Overcharging a company card or taking a pay advance is not the equivalent of stealing duffle bags full of cash.  It is at best a breach of contract, giving rise to a claim for damages.

### 3.    Plaintiff Fails to State a Claim for Unfair Business Practices

California Business & Professions Code § 17200 provides a cause of action for "unfair competition," defined as "any unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  As the definition suggests, the act or practice at issue must be a "business act or practice" – *i.e.*, connected to a commercial enterprise.  *See Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (statute applies to conduct that "can properly be called a business practice").

 A practice is unfair if it amounts to "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or in the same as a violation of the law, or significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. L.A. Cell. Tel. Co.*, 20 Cal. 4th 163, 187 (1999).  The conduct must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136-37 (9th Cir. 2014) (quoting *Cel-Tech*) (affirming dismissal of UCL claim for failure to identify breach of "legislatively declared policy").

To state a claim under the "fraudulent" prong, a competitor must show actual deception "to some members of the public, or harm to the public interest, and not

merely to a direct competitor or other non-consumer party to a contract." *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001). A plaintiff pleading a UCL "fraudulent practices" claim must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Becerra v. Gen. Motors LLC*, 241 F. Supp. 3d 1094, 1107 (S.D. Cal. 2017) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)).

Chartwell has failed to state anything approaching unfair or fraudulent business practices actionable under the UCL. It alleges, in conclusory fashion, that the Empire Parties "engaged in unlawful, unfair, and/or fraudulent business practices," and specifies three examples. FAC ¶ 98. It does not identify which conduct was "unlawful," "unfair," or "fraudulent." It fails to specify any statute that or "legislatively declared policy" that is implicated. It does not articulate the specific false representations, or that anyone relied or was likely to rely on them—much less with the particularity required under Rule 9(b). *Id.* Most of the conduct identified does not appear to be a "business practice" at all – *e.g.*, misusing company funds. Chartwell's cookie-cutter allegations fall short of stating facts—as opposed to mere conclusions—much less with the particularity required under Rule 9(b).

Moreover, Chartwell has failed to allege the essential ingredients of causation or injury-in-fact. *See* Cal. Bus. & Prof. Code § 17204 (actions "shall be prosecuted . . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition"). To state a claim under the UCL, Chartwell must plead (a) an economic injury, (b) caused by the unfair competition. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322-26 (2011). Chartwell does allege a dollar in economic loss caused by Empire. Instead, it demands "restitution." This is insufficient.

### D.   Plaintiff Is Improperly Splitting Causes of Action

A plaintiff is "not at liberty to split up his demand, and prosecute it by piecemeal." *United States v. Haytian Republic*, 154 U.S. 118, 125 (1894). The doctrine of claim splitting bars a later-filed action based on the same facts alleged in

an earlier action. *Bojorquez v. Abercrombie & Fitch Co.*, 193 F. Supp. 3d 1117, 1123-27 (C.D. Cal. 2016) (dismissing with prejudice claim brought by plaintiff who was a class member in earlier action).  The rule applies to parties and those in privity with the parties. *Adams v. Cal. Dept. of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007) (overruled on other grounds in *Taylor v. Sturgell*, 553 U.S. 880, 904 (2008)).

To determine whether a complaint violates the rule against claim splitting, the Court considers "[w]hether the two events are part of the same transaction or series [of transactions]." *Western Sys., Inc. v. Uloa*, 958 F.2d 864, 871 (9th Cir. 1992).  This "transaction test," depends on "whether the [suits] are related to the same set of facts and whether they could conveniently be tried together." *Id.*  Courts consider four factors:  (1) whether the rights or interests in the first case would be destroyed or impaired by prosecution of the second; (2) whether the same evidence is presented; (3) whether the suits involve infringement of the same right; and (4) whether they "arise out of the same transactional nucleus of facts." *Id.*

Chartwell's claims for breach of fiduciary duty, conversion, and unfair competition are identical to claims raised by Tracy Kidan in the pending divorce proceeding.   Tracy Kidan is in privity with Chartwell.  She is the sole shareholder, subject to Kidan's marital interest.  FAC ¶ 17.  "[A] person [who] owns most or all of the shares in a corporation and controls the affairs of the corporation" is in privity with the corporation. *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983).

The allegations in both cases are identical.  Tracy Kidan has accused Kidan of misusing assets of Chartwell in exactly the same way as Chartwell accuses him of doing in this case.  Tracy Kidan has already agreed to a *status quo* order in the Pennsylvania case and requested that the Court there keep the case open to determine whether Kidan misused company assets.  *See* Req. for Judicial Notice, Exs. 1 through 3.  She cannot now ask this Court to resolve the same issues she asked the Pennsylvania court to resolve by bringing the same claims nominally for Chartwell.

### E.   Plaintiff's Claims for Punitive Damages and Fees Are Barred.

Courts are mixed on whether the proper vehicle to dispense with a defective prayer for relief is a motion to strike or a motion to dismiss.  *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 1177, 1196 (C.D. Cal. 2011) (noting that motion to strike may be used for "a prayer for relief which is not available as a matter of law") (citing *Tapley v. Lockwood Green Eng'rs*, 502 F. 2d 559, 560 (8th Cir. 1974)); *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 272-73 ("such an argument is more properly advanced on a motion to dismiss or for summary judgment") (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010)).  Regardless of the mechanism, the Court can and should eliminate Chartwell's prayer for punitive damages and attorney's fees because they are barred by the DTSA.

The DTSA requires every employer seeking to enforce trade secrets protections to "provide notice of [whistleblower] immunity . . . in any contract or agreement with an employee that governs the use of a trade secret or other confidential information." 18 U.S.C. § 1833(b)(3)(A); *id.* at (b)(3)(B) (employer may provide notice in a policy document).  An employee is defined broadly to include consultants and independent contractors as well.  *See* 18 U.S.C. § 1833(b)(4)

"If an employer does not comply with the notice requirement . . ., the employer may not be awarded exemplary damages or attorney fees . . . in an action against an employee to whom notice was not provided."  *Id.* at (b)(3)(C).  The whistleblower protections of the DTSA, including the notice requirement and bar on punitive damages and fees, preempt state law.  18 U.S.C. § 1838 ("[e]xcept as provided in section 1833(b), this chapter shall not be construed to preempt or displace any other remedy" provided in state or federal law).

Chartwell alleges that it had employment contracts with each of the individual defendants other than Kidan, but does not (and cannot) allege that it gave them the mandatory whistleblower notice.  *See* FAC ¶¶ 19-27.  As a result, it "may not be awarded exemplary damages or attorney's fees" in this action.  18 U.S.C. §

1833(b)(3)(C).

**F.      Plaintiff's Irrelevant Allegations About Kidan's Prior Business Activities and Personal Life Should Be Stricken.**

Chartwell's gratuitous references to Kidan's prior business dealings and his romantic relationship with a co-worker should be stricken.  FAC ¶¶ 16, 32, 75.  Those allegations are immaterial and unnecessary to any claim alleged.  They serve no legitimate purpose.  Chartwell has included them simply to sling mud at Kidan. *Consumer Solutions REO, LLC*, 658 F. Supp. 2d at 1020.

**V.      <u>CONCLUSION</u>**

Because Chartwell has failed to state a claim on which relief can be granted, has failed to state its claims in a coherent manner, and demands remedies that are not available as a matter of law, the Court should grant this motion.

Dated:  May 10, 2019                    Respectfully submitted,


                                        By: s/ David Affeld
                                            David W. Affeld
                                            Damion D. D. Robinson
                                            Affeld Grivakes LLP

                                        Attorneys for Defendants

MOTION TO DISMISS AND STRIKE AND FOR A MORE DEFINITE STATEMENT

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing document using the Court's CM/ECF System.  I am informed and believe that filing through the CM/ECF system will cause notice to be served on all interested parties.

Damion Robinson

MOTION TO DISMISS AND STRIKE AND FOR A MORE DEFINITE STATEMENT